# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-107-01-02 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| LYNN CAWTHORNE and BELENA TURNER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

In the above-captioned case, the Government has filed a notice of intent to use "other crimes evidence pursuant to Federal Rule of Evidence 404(b)" against Defendant Belena Turner ("Turner"). Record Document 65. Turner opposes the introduction of this evidence. Record Document 74. For the reasons discussed below, the evidence will be admitted at trial.

In this case, the Government alleges that Lynn Cawthorne ("Cawthorne") and Turner defrauded the Summer Food Service Program ("SFSP") through which nutritious meals were to be provided to low-income children during the summer months. The Government contends that United Citizens and Neighborhoods ("UCAN"), of which Cawthorne was President and Turner was a director, participated as a sponsor in the SFSP from 2011 until 2014. Sponsors are those persons or entities applying to provide the feeding program's meals. Sponsors must secure a site where the meals will be provided to the children and must also identify the site supervisor, the names of the persons helping to serve the meals, the dates and hours of the meals, and specify how the meals will be prepared. Sponsors must maintain records documenting the number of meals served to eligible children. Reimbursement is obtained by submitting claims to the Louisiana

Department of Education. Alternatively, sponsors may receive advance funds for approved expenses by submitting a budget to the Louisiana Department of Education.

The Government asserts that the Defendants utilized UCAN as a sponsor for the feeding program, but that Turner submitted fraudulent reimbursement claims which greatly inflated the number of eligible meals provided to children at the feeding sites. One example provided by the Government is during the year 2013. For that summer, Turner's reimbursement claims on behalf of UCAN represented that UCAN's meal expenses were $257,923 and that UCAN served over 100,000 meals. To the contrary, according to the Government, UCAN "served only a token number of meals" and spent only $22,000 on food purchases that summer. Record Document 61, p. 4. The Defendants retained the rest of the program money for their personal use.

The potential Rule 404(b) evidence pertains to the same feeding program, but a different sponsor. The Government argues that during 2013 and 2014, Turner separately defrauded the SFSP by claiming her non-profit, the POWER Project, was providing eligible meals to children. Turner inflated the number of meals provided and in one year, there were no meals provided at all. The Government contends this is a similar fraudulent scheme as that charged in the Superseding Indictment and argues the evidence is admissible to prove Turner's opportunity, intent, plan, and lack of mistake or accident in committing the fraud charged in the Superseding Indictment.

Turner objects to the introduction of the evidence arguing that the POWER project fraud "occurred two years after the start of the alleged crime and is not relevant to anything other than the defendant's character." Record Document 74-1, p. 2. Turner

-2-

conclusorily submits that the evidence is not relevant to "intent, opportunity, motive, plan and etc." Id. Alternatively, Turner contends that the extrinsic evidence is overly prejudicial because the alleged fraud occurred at the same time as the fraud alleged in the Superseding Indictment, is of the same nature, and thus is too similar. Turner also argues that the evidence of various years of similar schemes will be repetitive, resulting in unduly lengthening the trial.

The Court finds that the POWER project evidence is admissible under Rule 404(b) as probative of opportunity, intent, plan, knowledge, and/or lack of mistake or accident. Admissibility of Rule 404(b) evidence is governed by United States v. Beechum, 582 F.2d 898 (5th Cir. 1978). Beechum imposes a two-step analysis to determine the admissibility of extrinsic act evidence: (1) the Court must first determine whether the extrinsic act is relevant to an issue other than the Defendant's character; and (2) the Court must ensure the probative value of the evidence is not outweighed by its prejudice. Id. at 911. "Rule 404(b) is designed to guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense. . . . 'This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.' " United States v. Sumlin, 489 F.3d 683, 689 (5th Cir. 2007) (quoting United States v. Ridlehuber, 11 F.3d 516, 521 (5th Cir. 1993)).

As to the first step of Beechum, the Fifth Circuit has explained that the "relevance of extrinsic act evidence is a function of its similarity to the offense charged." United

States v. Jimenez-Elvirez, 862 F.3d 527, 536 (5th Cir. 2017) (quoting United States v. Cockrell, 587 F.3d 674, 678 (5th Cir. 2009)) (internal marks omitted).  That is, the "[s]imilarity of the extrinsic offense to the offense charged is the standard by which relevancy is measured under Rule 404(b)."  United States v. Gordon, 780 F.2d 1165, 1173 (5th Cir. 1986).  Here, Turner's alleged fraudulent scheme with the POWER project is clearly relevant to an issue unrelated to her character.  Plainly, the "similarity and, hence, the relevancy" of Turner's "extrinsic offenses to the offenses charged in the present case is undeniable."  Id. at 1174.  This is a distinct, yet substantially similar scheme involving an identical fraudulent practice, which required the same level of intent as the charged offense.  See United States v. Smith, 804 F.3d 724, 736 (5th Cir. 2015) ("[A] [prior] offense is relevant to intent . . . if it requires the same intent as the charged offense, because evidence of the [prior] offense then lessens the likelihood that the defendant committed the charged offense with innocent intent.").  The extrinsic evidence is relevant and satisfies the first prong of Beechum.

The Court now assesses the second prong of Beechum, which is whether the extrinsic evidence's probative value is substantially outweighed by the undue prejudice it would cause.  The probative value of extrinsic evidence is not an absolute, but must be determined with regard to various factors, such as the extent to which the Government needs the evidence (which, said another way, is whether the charged offense can be established by other evidence), the overall similarity of the extrinsic and charged offenses, the amount of time that separates the extrinsic and charged offenses, and the use of limiting instructions.  Smith, 804 F.3d at 736.

As to the Government's need for the evidence, "[e]xtrinsic evidence has high probative value when intent is the key issue at trial. . . . This is particularly true when the evidence is 'necessary to counter [a defendant's] claim that he was merely an ignorant participant in the operation and never knowingly agreed to participate in a[n] [illegal] business." United States v. Juarez, 866 F.3d 622, 627 (5th Cir. 2017) (quoting United States v. Jackson, 339 F.3d 349, 356 (5th Cir. 2003)). Here, Turner has put her intent directly at issue by pleading not guilty. Id. at 627 n.1. Moreover, the extrinsic evidence is necessary to "eliminate alternative explanations, such as ignorance . . . ." Id. The Government's need for the evidence weighs in favor of admission.

The next factor is the similarity between the charged offense and the extrinsic conduct. Similarity increases both the probative value of the evidence, as well as the consequential prejudicial effect of its admission. Id. However, as the Fifth Circuit has stated, similarity does not require exclusion of the evidence. United States v. Kinchen, 729 F.3d 466, 473 (5th Cir. 2013). The Fifth Circuit has repeatedly affirmed the introduction of similar evidence unless it causes *undue* prejudice; mere prejudice alone does not suffice to exclude the evidence. See United States v. Hesson, 746 F. App'x 324, 331 (5th Cir. 2018) (allowing admission of prior Medicaid fraud, despite prejudice, as it was similar to the charged offense and occurred simultaneously); Juarez, 866 F.3d at 628 (allowing admission of prior participation in drug cartel activities, which was "essentially identical" to the charged offense); and United States v. Cockrell, 587 F.3d at 679-80 (collecting cases and allowing admission of defendant's prior drug conviction even though it was for "substantially the same crime charged"). This Court recognizes that the similarity between

the POWER project fraud and the UCAN fraud is prejudicial to Turner. However, the evidence is not unduly prejudicial, and the Court finds the similarity factor weighs in favor of admission.

As to the amount of time separating the charged and extrinsic offenses, the third factor the Court must consider, the Fifth Circuit has counseled that extrinsic evidence "is even more probative when the offenses occur concurrently." Smith, 804 F.3d at 736. Here, the alleged POWER project fraud occurred during the last two years of the fraudulent scheme charged in the indictment, and thus temporally overlaps with the charged offenses. This increases the probative value of the evidence. The closeness in time between the extrinsic evidence and the charged conduct weighs in favor of admission.

The fourth factor the Court must evaluate is the use of a limiting instruction. While a limiting instruction does not completely eliminate all of the prejudicial effect that stems from extrinsic evidence, it can certainly "allay" that effect. Juarez, 866 F.3d at 628 (quoting Beechum, 582 F.2d at 917). It is important for the Court to instruct the jury contemporaneously with the admission of the extrinsic evidence. Id. Prejudice is further eliminated if the limiting instruction is repeated during the jury charge. See e.g., United States v. McCall, 553 F.3d 821, 829 (5th Cir. 2008). Here, the Court intends to provide an appropriate limiting instruction at the time the evidence is admitted, as well as when the jury is provided its final instructions.

Lastly, even though all four factors favor the admission of the Rule 404(b) evidence, the Court must consider the overall prejudicial effect of the extrinsic evidence. United States v. Jones, 930 F.3d 366, 374 (5th Cir. 2019). This is a "commonsense assessment"

of the circumstances of the extrinsic act, including the nature of the act and the likelihood that the evidence would confuse or incite the jury. Juarez, 866 F.3d at 629. In this case, the extrinsic offense lacks the hallmarks of prejudicial evidence. It is non-violent, id.; it is not of a "heinous nature," Smith, 804 F.3d at 736; it is unlikely to "incite[] the jury to irrational decision by its force on human emotion, id.; and it is not "greater in magnitude" than the crime for which the Defendant is on trial, Juarez, 866 F.3d at 629. Balancing all of the factors in this case, the Court remains convinced that the evidence is relevant, admissible, and not unduly prejudicial.

For these reasons, the Government's proposed extrinsic evidence as to Turner is **ADMITTED**. The Court declines Turner's invitation to place time restrictions on the Government's presentation of this evidence. However, as always, the Court maintains the ability to control the mode and order of the presentation of evidence and will limit the Government's presentation of the extrinsic evidence if that evidence becomes repetitive, confusing to the jury, overshadows the evidence supporting the charged offenses, or if the prejudicial effect begins to outweigh its probative value.

**THUS DONE AND SIGNED** this 20th day of September, 2019.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE