UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-0107-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LYNN D. CAWTHORNE (01) | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Lynn D. Cawthorne ("Cawthorne"). Record Document 219. Cawthorne argues that he is entitled to § 2255 relief because the Court made an erroneous loss calculation at sentencing, his counsel was ineffective for failing to object to the erroneous loss calculation, and his plea agreement was ambiguous. The Government opposes Cawthorne's § 2255 motion and contends he is not entitled to any relief. Record Document 225.

For the reasons assigned herein, Cawthorne's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 219] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

Between 2011 and 2014, Cawthorne and his codefendant Belena Turner ("Turner") (collectively "Defendants") applied for a Louisiana Department of Education ("LDOE") program. As a part of this program, Defendants' organization, United Citizens and Neighborhoods, Inc. ("UCAN"), would provide meals to children in low-income areas and receive reimbursement for eligible meals fed to eligible persons. *See* Record Documents

1 at 3-4 & 144-2 at 1-2. As a participant in the program, UCAN was only reimbursed for expenses after it "electronically submitt[ed] claims to LDOE certifying that each claim is true and accurate." Record Document 144-2 at 2.

On April 26, 2018, Cawthorne and Turner were indicted in criminal case number 18-CR-0107 for, *inter alia*, wire fraud in violation of 18 U.S.C. §§ 1343 and 2 because of allegedly false claims made to the LDOE about UCAN's expenses and number of meals served. Record Document 1. On December 18, 2019, Cawthorne was also indicted in criminal case number 19-CR-0393 for two counts of aiding and assisting in making and subscribing a false return, in violation of 26 U.S.C. § 7206(2). 19-CR-0393, Record Document 1.

On November 5, 2021, a combined change of plea hearing was held for both cases. Cawthorne pleaded guilty to one count of wire fraud under criminal docket number 18-CR-0107, and one count of aiding and assisting in making and subscribing a false return under criminal docket number 19-CR-0393. Record Document 144. The Court sentenced Cawthorne to forty-six months imprisonment in docket number 18-CR-0107, to run concurrently with the sentence imposed in criminal docket number 19-CR-0393, and three years of supervised release.[1] Record Document 172 at 2-3. The Court also ordered

---

[1] According to the Bureau of Prisons ("BOP"), Cawthorne was released from custody and began serving his term of supervised release on August 6, 2024. *See Inmate Locator*, BOP, https://www.bop.gov/inmateloc. "[A] petitioner's § 2255 motion is not moot so long as the petitioner remains on supervised release." *Tekletsion v. United States*, No. 06-CV-857, 2006 WL 1752035, at *2 (S.D. Tex. June 22, 2006) (citing *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006)). Thus, although Cawthorne is no longer in BOP custody, his motion is not moot.

Cawthorne to pay $837,690.01 restitution to the Department of Agriculture, joint and several with Turner. *Id.* at 5.

## Law & Analysis

### I.  28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). The Court may consider an ineffective assistance claim raised

3

for the first time on a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

To state a successful claim of ineffective assistance of counsel, a petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). If a tactical decision is "conscious and informed … [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel

has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

## II. Analysis

Cawthorne's § 2255 motion raises claims challenging both the loss calculation and his plea agreement. He argues that: (A) the loss calculation was erroneous, meaning that the Sentencing Guidelines were misapplied and that his counsel was ineffective for failing to object to the misapplication at sentencing; and (B) his plea agreement was ambiguous.

### A. Loss Calculation

Cawthorne raises two distinct arguments about the Court's loss calculation of the amount attributable to the fraud. First, Cawthorne argues that the Court incorrectly applied the Guidelines to make its calculation and that his sentence is therefore "illegal." Record Document 219 at 4-5. Second, he argues that his counsel was ineffective for failing to object to the Court's loss calculation. *Id.* at 3-4.

5

According to Cawthorne's motion, the Court's loss calculation was incorrect because it was reached by taking the total loss, then deducting the costs of food, employee staffing, and reimbursement to LDOE—without providing credit for meals UCAN actually served to eligible persons. *Id.* at 3. Cawthorne argues there was evidence that UCAN ran active service sites with an average service of 75 breakfasts and lunches per day, which would total an additional $325,000.00 credit for meals served. *Id.* at 3-4. This would have resulted in total restitution of $512,690.00, rather than the $837,690.01 restitution ordered by the Court. The Court considers each of Cawthorne's arguments as to the loss calculation in turn.

### i. Illegality of Sentence

Cawthorne's argument that his sentence is illegal because the Court misapplied the Sentencing Guidelines to make its loss calculation is not cognizable on a § 2255 motion. The Fifth Circuit has explained that "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *United States v. Faubion*, 19 F.3d 226, 233 (5th Cir. 1994)). "Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Id.*

Cawthorne's claim that his sentence was illegal based on a misapplication of the Guidelines is not cognizable. However, a defendant may bring a claim that their counsel rendered ineffective assistance by failing to make the argument when it was cognizable.

*Id.* Therefore, the Court turns to Cawthorne's argument that his counsel was ineffective for failing to object to the Court's loss calculation.

### ii.    Ineffective Assistance

Cawthorne's claim that his counsel was ineffective for failing to object to the Court's loss calculation is meritless because his counsel did challenge the calculation both at sentencing[2] and on appeal. At sentencing, Cawthorne's counsel argued essentially what Cawthorne argues now in his § 2255 petition—that the loss calculation should account for the actual meals served by UCAN.[3] His counsel stated:

> I understand that one of the obligations is to try to reach as accurate as possible the intended loss, and the method chosen by the government is not correct. It may never have been correct. What you have to start with in this case is the number of children that Mrs. Turner intended to feed on the application. Once you've started with that number, then you have to see how many children were actually fed and how many times during a day they were actually fed.
>
> The government's theory is that they counted the expenditures for food costs that they could find, and they started with the amount that UCAN actually received from the Louisiana Department of Education, subtracted the number of meal costs out, and that left them with a static number for the intended loss.
>
> The problem with that, and the law with respect to sentencing, is that this was an ongoing operation. They did feed every child that showed up to be fed, and sometimes they fed them twice a day.

---

[2] The Court sentenced Cawthorne and Turner at the same hearing.

[3] In an objection to the presentence investigation report, Cawthorne's counsel also objected more generally to the sufficiency of the evidence for the loss calculation. Record Documents 153 at 2-3 & 185 at 4. Cawthorne's counsel suggested the more accurate calculation was $132,257.25, which was the amount of loss claimed by the state of Louisiana in the related civil litigation. *See id.*

7

Record Document 185 at 10-11. Counsel then submitted into evidence and explained to the Court UCAN's Summer Food Service Program Sponsor Application. *Id.* at 11-13; *see also* Record Document 182-1. The Court admitted the record but noted that if Defendants wanted to challenge the Government's proposed loss calculation, it was Defendants' burden to explain which expenses were not accounted for, and they had not done so. Record Document 185 at 15. Turner's counsel also argued against the Court's loss calculation, asserting that the most reliable calculation was the one made during the LDOE's initial investigation for the purposes of the related civil litigation. *Id.* That calculation was $132,257.25. *Id.*

The Court overruled both Defendants' objections and arguments, specifically addressing Cawthorne's counsel's argument about credit for the actual meals served:

> Cawthorne has argued that the more exact figure to use would, in fact, be the number of children who were fed and the amount of money that was received. The defense has offered no such figures. The Court notes that figures with regard to what additional expenses there were, or to the number of children fed, are within the purview of the defendants and not the government, and certainly they have the ability to come forward to refute these figures in any way.

*Id.* at 44. The Court proceeded to calculate the amount of loss, using Fifth Circuit precedent to determine what data was sufficiently reliable. *Id.* at 44-45. It ultimately concluded that the amount of intended loss would be calculated as the amount LDOE actually paid to UCAN minus the "cost of food and other expenses . . . which could be legitimately tied to food purchased" or related expenses, for a total of $958,771.00 actual

8

loss. *Id.* at 48-49.[4] Defendants challenged the Court's loss calculation on appeal. *See* Record Document 202 at 6-7. The Fifth Circuit denied the appeal and affirmed the loss calculation. *See id.*

The sentencing transcript makes clear that Cawthorne's counsel did in fact object to the Court's loss calculation. His counsel made several arguments against the calculation, including the argument Cawthorne now raises in his § 2255 motion. The Court found the argument meritless and the Court's calculation was subsequently affirmed on appeal.[5]

The Court observes that its loss calculation was based on funds Cawthorne and Turner took in from the LDOE minus funds they expended on meals actually served. It is unclear how the number of meals served would impact the dollar amounts moving in and out of UCAN. Cawthorne's only attempt to explain the alleged error is his broad, unsupported statement that the amount of meals served "should correspond to $75,000 to $95,000 annually." Record Document 219 at 4. There was no evidence at sentencing

---

[4] Again, later at sentencing, the Court addressed the issue of the amount of restitution to be ordered. Record Document 185 at 57. The Government proposed "crediting against restitution figures the actual food purchased, the salaries of potential workers, and rental fees paid for legitimate sites." *Id.* The parties did not object to the amount of restitution ordered. *See id.* at 58-59. As such, the Court ultimately ordered restitution in the amount of $837,690.01. Record Document 172 at 5.

[5] Even if Cawthorne's counsel had not objected, "[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990).

to support such an estimation and Cawthorne does not provide any evidence to support such an estimation now.[6]

In sum, Cawthorne's claim that his sentence is illegal because the Court incorrectly applied the Sentencing Guidelines to make its loss calculation fails because the claim is not cognizable on a § 2255 motion. *See Williamson*, 183 F.3d at 462. Cawthorne's claim that his counsel was ineffective for failing to raise a particular challenge to the loss calculation also fails because counsel did raise the argument at sentencing. Further, both this Court and the Fifth Circuit found that argument to be meritless. Therefore, Cawthorne's counsel was not deficient and no prejudice resulted from any alleged deficiency. *See Strickland*, 466 U.S. at 687.

### B. Ambiguity of Plea Agreement

Finally, Cawthorne claims that his plea agreement was ambiguous. Record Document 219 at 2-3. However, Cawthorne does not explain how or why his plea agreement was ambiguous and therefore fails to meet his burden of establishing he is entitled to relief under § 2255. *See United States v. Kastenbaum*, 613 F.2d 86, 89 (5th

---

[6] Additionally, Cawthorne does not allege that there is any documentation that he provided to his counsel that would have supported such an estimation. And even if those records did exist and Cawthorne's counsel had access to those records, Cawthorne has not shown that his counsel was deficient for failing to introduce those records. This Court is "highly deferential" to counsel's performance "to eliminate the distorting effects of hindsight." *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). In the instant motion, Cawthorne argues his counsel should have argued that the Court make its loss calculation as the Government proposed but with additional credit given for meals served. *See* Record Document 219 at 3-4. This calculation would have resulted in restitution in the amount of $512,690.00. *See id.* At sentencing, Cawthorne's main argument was that the loss calculation should be $132,257.25—significantly less than the calculation Cawthorne advocates for now. Record Document 185 at 15.

Cir. 1980) ("The defendant has the burden of sustaining his contentions on a § 2255 motion by a preponderance of the evidence." (citation omitted)). Out of an abundance of caution, the Court has reviewed Cawthorne's plea agreement and has not found any ambiguities that would entitle him to relief. *See* Record Document 144.

## Conclusion

For the reasons assigned herein, Cawthorne's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 219] is **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Cawthorne has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this ~~29th~~ 2nd day of ~~May~~ June 2025.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE